No. 98,964

In the Matter of THOMAS T. O'NEILL, *Respondent.*

(172 P.3d 1179)

Opinion filed December 14, 2007.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio*, of John J. Ambrosio, Chartered, Topeka, argued the cause for respondent, and *Thomas T. O'Neill*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator against respondent, Thomas T. O'Neill, an attorney admitted to the practice of law in Kansas in September 1986. The respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is in Kansas City, Kansas. This court temporarily suspended respondent's license to practice law in Kansas on January 9, 2006, pursuant to Kan. Sup. Ct. R. 203(c)(4) (2006 Kan. Ct. R. Annot. 243), after notification from the Disciplinary Administrator that the respondent had been convicted of felony driving under the influence (DUI).

A formal complaint was filed charging respondent with violating KRPC 8.4 (2006 Kan. Ct. Annot. 510), based upon the felony DUI conviction. The complaint alleged that respondent was charged on August 29, 2002, with DUI, and that the offense was charged as a felony because respondent had previously been twice convicted of DUI. The complaint alleged that respondent was convicted on that charge on September 29, 2003, based upon a stipulation of facts, that an appeal was taken to the Kansas Court of Appeals, and that respondent's conviction was affirmed. (*State v. O'Neill*, No. 93,108, unpublished opinion filed November 10, 2005.)

The respondent filed an answer admitting the allegations of the complaint. The matter was set for a hearing before the Kansas Board for Discipline of Attorneys but was continued by agreement

to allow the Disciplinary Administrator to file a second formal complaint.

An amended formal complaint was then filed which included the additional allegations that respondent had failed to disclose a number of his arrests and convictions when he applied for admission to the Kansas bar, in violation of KRPC 8.1(a) (2006 Kan. Ct. R. Annot. 505). Following the hearing before a panel of the Kansas Board for Discipline of Attorneys, the panel concluded respondent had violated KRPC 8.1(a) (knowingly making a false statement of material fact in applying for admission to the bar) and KRPC 8.4(b) (committing a criminal act). A majority of the hearing panel recommends that the respondent be indefinitely suspended from the practice of law in the state of Kansas. One member of the panel recommends disbarment.

The panel made findings of fact, reproduced in pertinent part as follows, and conclusions of law:

### "FINDINGS OF FACT

. . . .

"2. On April 30, 1986, the Respondent applied to take the Kansas bar examination. In so doing, the Respondent filed with the Clerk of the Appellate courts a document entitled, 'Applicant's Questionnaire and Affidavit' and a 'Petition for Admission to the Bar of the State of Kansas by Written Examination.'

"3. Question 17(a) of the Applicant's Questionnaire and Affidavit provides as follows:

'Have you ever been summoned, arrested, taken into custody, indicted, convicted OR tried for, OR charged with, OR pleaded guilty to, the violation of any law or ordinance or the commission of any felony or misdemeanor, OR have you ever been refused a fidelity or other bond?

'NOTE 1: Include all such incidents no matter how minor the infraction or whether guilty or not except minor traffic violation and juvenile offenses.

'NOTE 2: Although a conviction may have been expunged from the records by order of a Court, it nevertheless must be disclosed in your answer to this question. See K.S.A. Supp. 21-4619.'

The Respondent answered question 17(a) in the affirmative. The Respondent attached a letter from R. Richard Stanwix, the Police Chief of Lawrence, Kansas, at the time. In the letter, Chief Stanwix advised that the Respondent had two convictions for reckless driving in Lawrence, Kansas. The convictions occurred in January, 1981, and September, 1981. No additional arrests or convictions were disclosed by the Respondent in the Applicant's Questionnaire and Affidavit.

"4. The Respondent's Applicant's Questionnaire and Affidavit includes the following statement:

'. . . I have carefully read the questions in the foregoing questionnaire and have answered them truthfully, fully, and completely, without mental reservations of any kind and that the answers are complete and are true to my own knowledge.'

Following the above statement, the Respondent signed his name. The Respondent's signature was notarized.

"5. Section VIII of the Respondent's Petition for Admission to the Bar of the State of Kansas by Written Examination contains the following statement:

'I further state that I have never pleaded guilty nor have I been convicted of a felony or of a misdemeanor other than minor traffic offenses, except . . . .'

Following that statement, the Respondent inserted the following:

'1. Reckless driving; January 15, 1981; Lawrence, Kansas; Municipal Court of Lawrence.

'2. Reckless driving, September 23, 1981, Lawrence, Kansas; Municipal Court of Lawrence.

'see letter from R. Richard Stanwix, Chief of Police, Lawrence, Kansas.'

Following the Respondent's typewritten references to two reckless driving convictions, the form of the Petition contains the following note, 'If ever convicted, give date, place, name of trial court, nature of offense charged, present status, etc. Specify fully.'

"6. Section XII of the form of the Petition contains the following statement:

'I fully agree that notwithstanding I am admitted to practice law in the courts of the State of Kansas by reason of this petition, if it should develop hereafter that any statement herein contained is false, it shall be ground for the Supreme Court to cancel my certificate of admission and to revoke my license as an attorney at law.'

The Respondent's signature follows this statement. Following the Respondent's signature appears the following statement which is signed by the Respondent and notarized:

'I, Thomas Tyrone O'Neill, the petitioner above named, do solemnly swear that I signed the above and foregoing petition; that I have read the said petition and that all statements therein made are true. So help me God.'

"7. In the Questionnaire and Affidavit as well as in the Petition for Admission to the Bar of the State of Kansas by Written Examination, the Respondent was required to swear that the information he provided was true. In both documents, he signed the statement, representing that the information contained was true and complete. However, the Respondent failed to include criminal arrest and conviction information in both the Questionnaire and the Petition.

"8. At the time the Respondent filed the Questionnaire and Petition, his criminal arrest and conviction history included the arrest and convictions detailed in paragraphs 9 through 14, 16, 17, and 19, below.

"9. On November 7, 1974, the Respondent was convicted of a felony offense for the sale/cultivation or distribution of hallucinogenic drugs. See K.S.A. 65-4127(b)(3). This conviction was later expunged.[1]

[FOOTNOTE 1: At the hearing on this matter, the Respondent introduced an Order of Annulment from the 1974 felony conviction. The order does not reference any statute which provides the authority to annul the conviction. The statute referenced in the order pertains only to expungement.]

"10. On March 22, 1978, the Respondent was convicted of driving under the influence of alcohol in Sedgwick County District Court.

"11. On May 31, 1978, the Respondent was convicted of a misdemeanor offense of possession of hallucinogenic drugs. See K.S.A. 65-4127(a)(3).

"12. On March 26, 1983, the Respondent was arrested for driving under the influence of alcohol by officers from the Wichita, Kansas, police department. The disposition of this case is unknown.

"13. On March 21, 1985, the Respondent was arrested for driving under the influence of alcohol by officers in Douglas County, Kansas. Following his arrest, the Respondent was convicted of the offense in the Municipal Court of Lawrence, Kansas. The Respondent appealed his conviction to the District Court of Douglas County, Kansas. At a trial de novo, the Respondent was found not guilty.

"14. On May 8, 1985, the Respondent was arrested for driving under the influence of alcohol by officers from the Wichita, Kansas, police department. The disposition of the case is unknown.

"15. The Respondent was admitted to the practice of law in the state of Kansas on September 30, 1986.

"16. On January 25, 2002, officers from Kansas City, Kansas, police department arrested the Respondent for having violated K.S.A. 8-1567, driving under the influence of alcohol. Thereafter, on August 12, 2002, the City of Kansas City, Kansas, moved to dismiss the case for a lack of jurisdiction. Then, on August 29, 2002, the Respondent was charged in the District Court of Wyandotte County, Kansas, with having violated K.S.A. 8-1567, driving under the influence of alcohol. In the charging document, the prosecutor alleged that the offense was a felony because the Respondent had been twice previously convicted of driving under the influence of alcohol.

"17. The Court convicted the Respondent of felony driving under the influence of alcohol.[2] The Respondent appealed the 'sentence, orders and judgments.' The Court of Appeals affirmed the Respondent's conviction.

[FOOTNOTE 2: According to the journal entry, the court convicted the Respondent following a plea. However, according to the Respondent's docketing statement, the Respondent was convicted following a trial based upon stipulated facts.]

"18. Thereafter, on January 9, 2006, pursuant to Kan. Sup. Ct. R. 203(c)[4], the Kansas Supreme Court entered an order temporarily suspending the Respondent's license to practice law in Kansas, based upon the felony conviction.

"19. While his felony conviction was on appeal, in October, 2005, the Respondent was again arrested for driving under the influence of alcohol. Thereafter, he was charged with driving under the influence in the Municipal Court of Mission Hills, Kansas. The Respondent entered a plea to the misdemeanor charge and was convicted of the same. The Respondent testified that he did not know why the charge of driving under the influence of alcohol in Mission Hills, Kansas, was not charged as a felony.

"20. In preparation for the hearing on the Formal Complaint, either the Respondent or counsel for the Respondent contacted Donald L. Zemites, Executive Director of Kansas Lawyers Assistance Program. Mr. Zemites agreed to write an open letter in behalf of the Respondent. Mr. Zemites included the following statements in his letter:

'On January 25, 2002, Mr. O'Neill was charged with a felony DUI in the District Court of Wyandotte County and in February 2002 entered mainstream K.C. and successfully completed a thirty-day inpatient treatment program and has maintained sobriety since then.

'Mr. O'Neill self-referred to me in October 2003, entered a monitoring agreement (attached), and has continued attendance to AA meetings and in sobriety since that time. . . .

. . . .

'Mr. O'Neill has maintained sobriety for 5 years, demonstrating his ongoing recovery from his addiction and taken action and responsibility toward protecting his clients and correcting the problem that created his felony conviction and present complaint . . . .'

At the hearing on this matter, the Respondent testified about Mr. Zemites' knowledge of the Respondent's subsequent arrest and conviction. The following exchange occurred between the Respondent and a Hearing Panel member:

'Q. [By Ms. Butaud] Mr. O'Neill, I guess I'm really bothered by the report from Mr. Zemites. I just feel like we should be able to rely on information that comes from his office when it's presented to us. And it's clear from your testimony and the questions from Mr. Hazlett that this is not at all accurate. Is that true?

'A. [By the Respondent] I think it's fairly accurate.

'Q. But it says that you have maintained sobriety for five years?

'A. I had a relapse that I didn't tell him about and that's true.

'Q. And it's clear that Mr. Zemites believes that you were sober for 5 years?

'A. Yes, I didn't tell him about my relapse.'

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.1(a) and KRPC 8.4(b)3, as detailed below:

[FOOTNOTE 3: In preparing for the disciplinary hearing, the Respondent or his counsel contacted Mr. Zemites and requested that he submit a letter of

support. However, the Respondent had not informed Mr. Zemites of the 2005 arrest and conviction of driving under the influence of alcohol. By failing to disclose his subsequent arrest and conviction for driving under the influence of alcohol to Mr. Zemites and then seeking his support in the disciplinary process, it appears to the Hearing Panel that the Respondent violated, at least the spirit of, KRPC 8.1(b). That section provides that 'a lawyer . . . in connection with a disciplinary matter, shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter.']

"2. In applying for admission to the bar, '[a]n applicant . . . shall not knowingly make a false statement of material fact.' KRPC 8.1(a). In this case, the Respondent made a false statement of material fact in applying for admission to the bar when he failed to disclose six arrests and convictions on the Questionnaire and Affidavit and the Petition for Admission to the Bar of the State of Kansas by Written Examination. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.1(a).

"3. According to KRPC 8.4(b), '[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' A felony conviction for driving under the influence of alcohol and an additional conviction for what should have amounted to a second felony driving under the influence of alcohol reflects adversely on the Respondent's fitness as a lawyer. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal profession to maintain personal integrity

"*Mental State.* The Respondent knowingly and intentionally violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. The Respondent failed to disclose the vast majority of his criminal history when he applied to take the bar examination. Thus,

the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. By failing to disclose six arrests and convictions, the Respondent engaged in a pattern of misconduct. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. The Respondent submitted false evidence and engaged in other deceptive practices during the disciplinary process when he sought and obtained a letter of support from Mr. Zemites, knowing that Mr. Zemites did not have the facts necessary to fully appreciate the Respondent's current fitness.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1986. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of approximately 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal Conduct, Including that Involving the Use of Controlled Substances. The Respondent has repeatedly been arrested and convicted of violations of the law. Clearly, the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent has a long-standing alcohol addiction. The Respondent's addiction to alcohol contributed to his violations of the rules.

"Imposition of Other Penalties or Sanctions. In the criminal cases, the Respondent has been subject to other penalties and sanctions.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. Standard 5.11.

'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice. Standard 5.12.

'Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding. Standard 6.11.

'Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. Standard 6.12.

'Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. Standard 7.1.

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

## RECOMMENDED DISCIPLINE

The hearing panel was not unanimous in its recommendation for discipline. A majority of the panel recommended that respondent be indefinitely suspended, but one panel member would have imposed disbarment. The majority explained its recommendation as follows:

"The Disciplinary Administrator recommended that the Respondent be disbarred. Counsel for the Respondent recommended that the Respondent be placed on probation subject to the terms and conditions of probation detailed in his plan.

". . . . In this case, probation is not appropriate because the Respondent's plan is not workable, substantial, and detailed. Additionally, the Respondent's misconduct involves dishonest conduct. Dishonest conduct cannot be corrected by probation. Finally, placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, a majority of the Hearing Panel recommends that the Respondent be indefinitely suspended from the practice of law in the state of Kansas."

The dissenting panel member believed disbarment would be the appropriate discipline:

"With respect to my perhaps more wise colleagues on the Hearing Panel, my recommendation would be for disbarment in this instance. Mr. O'Neill omitted six arrests and/or convictions which should have been disclosed on his application for admission to the Bar. The application was made under oath. This constitutes a violation of KRPC 8.1(a). While this violation may seem remote and may never have been discovered had the Respondent not been convicted of felony driving under the influence of alcohol, the pattern started by the Respondent by the omission of information in 1986 appears to be reoccurring by the Respondent's failure to report the October, 2005, driving under the influence of alcohol arrest pursuant to the informal monitoring agreement. The Respondent allowed his attorney at the disciplinary hearing to offer Exhibit A knowing that information contained therein was not accurate. This pattern of dishonest behavior toward his substance abuse problem, and attempt to conceal it, distinguishes this factual scenario from that in the case of *In the Matter of Joseph M. Laskowski*, No. 96,886 [282 Kan. 710, 147 P.3d 135 (2006)]. In that case, indefinite suspension was ordered by the Kansas Supreme Court. It is my opinion that the facts in the present case are more aggravated and that disbarment would be the appropriate discipline."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Landrith*, 280 Kan. 619, 636, 124 P.3d 467 (2005); see also Supreme Court Rule 211(f) (2006 Kan. Ct. R. Annot. 284) (misconduct to be established by clear and convincing evidence).

The respondent did not file any exceptions to the panel's final report. Accordingly, the final report is deemed admitted. Supreme Court Rule 212(d) (2006 Kan. Ct. R. Annot. 295).

We hold the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, with one exception. The panel concluded that the respondent's failure to disclose the 1974 felony drug conviction, among others, constituted a false statement in applying for admission to the bar

and, thus, violated KRPC 8.1(a). The panel's conclusion was based on the belief that the annulment of that conviction was actually an expungement. This does not appear to be correct although it is unclear from the record whether that conviction was annulled or expunged and what statute was applied. The conviction may have been annulled under K.S.A. 21-4616 (Weeks) or K.S.A. 21-4617(b) (Weeks), either of which provided that, upon annulment, the offender "shall in all respects be treated as not having been convicted," except for determining sentence in the event of a subsequent conviction, and that "[i]n any application for employment, license or other civil right or privilege . . . [the offender] may state that he has never been convicted of such crime." We conclude that respondent's failure to list the 1974 conviction on the bar admission form has not been shown by clear and convincing evidence to constitute a violation of KRPC 8.1(a).

With respect to the discipline to be imposed, the panel's recommendation is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the disciplinary administrator. Rule 212(f).

The failure to disclose the 1974 conviction aside, there are five arrests and/or convictions which were intentionally and wrongfully omitted from the bar examination, admission documents, and the untrue oaths he took thereon. This is a very serious violation, even though it remained undiscovered for many years. But for the 2003 felony DUI offense, the violation might well have gone undiscovered. This does not lessen the severity of the misconduct.

Respondent's submission of the Zemites letter, knowing that it was based on information respondent had not disclosed to Zemites, is in keeping with the respondent's pattern of wrongful nondisclosure of crucial information relative to legal proceedings. Through the nondisclosure and false recommendation respondent had obtained and submitted, he obviously hoped to avoid serious discipline sanctions herein. Then, of course, we have the 2003 DUI conviction from which the case arose as well as the October 2005 DUI conviction, occurring while the 2003 conviction was on appeal. The violations are very serious and the only possible choice of appropriate discipline is between indefinite suspension and dis-

barment. Like the panel, we are not unanimous as to the discipline to be imposed. After careful consideration, we conclude the appropriate discipline is indefinite suspension although a minority would disbar the respondent.

Respondent has an established record of deception as to his misconduct. Should respondent ever seek reinstatement to the practice of law in Kansas and the petition is referred by the court to the Disciplinary Administrator, that office is directed to check out thoroughly every aspect of respondent's petition and investigate respondent's activities in the years that will have elapsed since his suspension and make a detailed report and hold a full hearing thereon for consideration by a hearing panel and/or this court. See Supreme Court Rule 219 (2006 Kan. Ct. R. Annot. 327).

IT IS THEREFORE ORDERED that Thomas T. O'Neill be indefinitely suspended from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243).

IT IS FURTHER ORDERED that respondent forthwith comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.

DAVIS, J., not participating.

McANANY, J., assigned.